49 N.J. Super. 469 (1958)
140 A.2d 429
ALPH DAILY, PLAINTIFF,
v.
HAROLD M. SOMBERG AND JOHN J. FLANAGAN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 2, 1958.
*472 Messrs. Baker, Garber & Chazen (Mr. Bernard Chazen, appearing), attorneys for plaintiff.
Messrs. Emory, Langan, Lamb & Blake (Mr. H. Curtis Meanor, appearing), attorneys for defendant Somberg.
Messrs. Braun and Hoey (Mr. William P. Braun, Sr., appearing), attorneys for defendant Flanagan.
DREWEN, J.C.C. (temporarily assigned).
This is a motion by defendants for summary judgment in a medical malpractice case. The motion rests on the claimed effect of a general release heretofore given by the present plaintiff in a suit brought by him to recover damages against the original tort-feasor for the injuries whose treatment is in question in the present suit. Defendants rely in support of their motion on the pleadings, the admissions made in response to defendants' request therefor and the pretrial order as amended.
The accident from which the primary injuries resulted occurred in Ohio. Suit to recover for the injuries was brought in the United States District Court for the Southern District of New York. Daily v. Dealer's Transport Co., 16 F.R.D. 566. In a trial thereof the jury disagreed, some *473 time whereafter the claim was settled and general release given in consideration of the payment of $139,000. The instrument of release was made and delivered in New Jersey.
A statement of further details is in order. The accident occurred January 14, 1954. After confinement for about one month to a hospital in Ohio for the treatment of severe injuries, plaintiff was transferred for further treatment to St. Michael's Hospital in Newark, New Jersey, where he came under the care of the defendant physicians. On May 22, 1954 defendants performed an operation on plaintiff for a condition resulting from the primary injury. Plaintiff was discharged from the hospital in Newark on June 7, 1954, continuing under defendant Flanagan's care for some time thereafter. It was not until all treatment had been terminated that the prior suit for damages was brought, in the federal court as aforesaid and against Dealer's Transport Company. The attorneys representing plaintiff in the present action represented him in that action.
On May 21, 1956, while the federal suit was still pending, the instant complaint was filed, predicated upon the aforementioned surgical procedure of May 22, 1954. Shortly after the filing of the instant complaint, and on June 12, 1956, plaintiff and his wife executed the general release now pleaded, and relied on by defendants in the motion before us.
A copy of the release is attached to defendant's request for admissions, and by answer to the fourth request it is admitted to be a true copy of the release executed by the plaintiff and delivered to Dealer's Transport Company. In form, the release is general, unconditional and contains no reservation of rights. After setting forth acknowledgment of the receipt of $139,000, it reads, in part, as follows:
"* * * in consideration thereof the undersigned * * * release and forever discharge the said Releasees * * * of and from all and all manner of action and actions, cause and causes of action * * * claims and demands whatsoever, * * * which against the said Releasees, * * * the undersigned ever had, now have, or claim to have or which they * * * hereafter can, shall or may have * * * including without limiting the generality of the *474 foregoing, all claims and demands arising or growing out of an accident * * * which occurred on or about the 14th day of January, 1954 on U.S. Route 30 in the vicinity of Van Wert, Ohio and all claims and demands of the undersigned arising out of or in any way connected with any of the matters set forth in the pleadings filed in the U.S. District Court for the Southern District of New York in the cause entitled `Alph Daily, plaintiff, against Dealer's Transport Company, a corporation, defendant', * * *."
"* * * the undersigned hereby release all claims including all those for known and unknown and anticipated and unanticipated injuries and damages. The undersigned * * * have relied upon the advice and representations of counsel selected by the undersigned respecting the legal liability of the parties released for the claims hereby released. The undersigned * * * understand fully the above and foregoing release and have been fully advised as to the legal effect thereof by counsel of their own selection."
The foregoing instrument, be it carefully noted, releases plaintiff's "claims and demands arising or growing out of an accident * * * in * * * Ohio and all claims and demands * * * in any way connected with any of the matters set forth in the pleadings * * * in the U.S. District Court" case. The legal effect of such release on the present cause of action can be determined only after the "injuries and damages" proximately resulting from the injury in Ohio have been ascertained. The fundamental problem appears to be one of causation. Whether an act is the legal cause of another's injury is determined by the law of the place of the wrong. 11 Am. Jur., Conflict of Laws, sec. 182. The rights and liabilities arising out of the accident in Ohio are to be determined by the law of Ohio, the state in which the accident occurred. Clement v. Atlantic Casualty Ins. Co., 13 N.J. 439, 442 (1953); Harber v. Graham, 105 N.J.L. 213, 214-215 (E. & A. 1928). The law that creates the right determines what items of loss are to be included in the damages. Since the right to damages is created by the law of Ohio, it is measured by that law. Restatement, Conflict of Laws, sec. 412, comment (a); 11 Am. Jur., Conflict of Laws, sec. 185. The law of Ohio controls not only in ascertaining the damages that proximately resulted from the injury sustained there, but also in determining the legal effect of *475 the instrument releasing plaintiff's claim for such damages. The effect of a release is properly determined by the law controlling the discharge of the obligation sought to be released. Preine v. Freeman, 112 F. Supp. 257 (D.C.E.D. Va. 1953); 76 C.J.S., Release, § 39, p. 671.
The decisions show it to be the law of Ohio that a release, given as in the present case and under the circumstances therein prevailing, effectually terminates the coexisting malpractice suit and likewise releases the defendants therein. The decisions further show that this is so whether the malpractice suit be in contract, Tanner v. Espey, 128 Ohio St. 82; 192 N.E. 229 (Sup. Ct. 1934), or in tort, Knight v. Strong, 101 Ohio App. 347, 140 N.E.2d 9 (Ohio Ct. App. 1955); and whether the release be executed in the State of Ohio, Tanner v. Espey, supra, or apparently outside the state, Knight v. Strong, supra. Judgment in such cases has been entered on the pleadings in Ohio in favor of the malpractice defendants. Tanner v. Espey, supra; Knight v. Strong, supra.
In the law as just stated there is involved a qualification that has to do with the claimed extent and result of the alleged malpractice upon which the suit therefor is based. This qualification is defined in the syllabus of the Tanner case supra; and under the Ohio rule it is the syllabus of a case that must be taken as embodying the law thereof. (State ex rel. Donahey v. Edmondson, 89 Ohio St. 93, 107-108, 105 N.E. 269, 273, 52 L.R.A., N.S., 305 (Sup. Ct. 1913); Perkins v. Benguet Mining Co., 342 U.S. 437, 441-442, 72 S.Ct. 413, 96 L.Ed. 485 (1952).) The Tanner syllabus covers two principles: (a) that of causation as applicable to the cause of action against the original wrongdoer; (b) that which governs the effect of the general release executed in favor of the original wrongdoer. The syllabus of the Tanner case reads as follows:
"1. If one who has suffered personal injuries by reason of another's negligence exercises reasonable care in obtaining the services of a competent physician or surgeon, and such injuries are thereafter aggravated by the negligence, mistake or lack of skill of such *476 physician or surgeon, such aggravation is a proximate result of the negligence of the original tortfeasor, and he is liable therefor. [Italics supplied.]
2. If one has suffered personal injuries which thereafter were aggravated by the malpractice of an attending physician or surgeon, and then executes a valid, general and unconditional release to the original tortfeasor in full settlement for all present and future claims and causes of action, such release operates as a bar to an action against such physician or surgeon for such malpractice."
A corollary of the foregoing is contained in the syllabus of the Knight case, supra:
"1. A general release, executed in favor of one responsible for the original physical injury of a plaintiff resulting from tort, precludes an action against a physician and surgeon for damages incurred by his negligent treatment of the injury, in the absence of a showing that the negligence of the physician or surgeon produced a new and independent injury." (Italics supplied.)
In Mainfort v. Giannestras, 49 Ohio, Ops. 440, 67 Ohio Law Abst. 380; 111 N.E.2d 692, 694 (Ohio Com. Pl. 1951), the operation giving rise to the malpractice action occurred seven months after the release had been executed in favor of the original wrongdoer. Nevertheless, the court denied plaintiff's motion to strike a defense setting up the release as a bar to the action against the physician. In doing this the court indicated that the determinative test is whether the alleged malpractice merely aggravated the original injury and was thus a proximate result of the negligence of the original tortfeasor, or whether it brought into existence a distinct, i.e., a new and independent injury, unassociated with the original wrong and not reasonably foreseeable by the original wrongdoer. In the latter event the release is no bar.
With these principles in mind, we return to the problem of the motion before us. Defendants contend that the Ohio law controls; that the general release executed in favor of the original wrongdoer bars the present action in New Jersey, since the payment received in consideration for the release has satisfied plaintiff for all the damages proximately resulting from the Ohio accident, including the aggravation *477 of the original injury by the alleged negligence of the defendants in New Jersey. Plaintiff contends that the law of Ohio has no application to the present case; that there is no presumption that the plaintiff has been made whole by his settlement with the parties who injured him originally so as to bar a recovery from defendants for subsequent malpractice; that the actions of defendants in New Jersey had nothing to do with the wrongs done in Ohio but were done independently in New Jersey which is "the place of the wrong"; that the release was executed in New Jersey and its effect should be determined by the law of New Jersey. Plaintiff relies on the recent case of Breen v. Peck, 48 N.J. Super. 160 (App. Div. 1957), and conceded at the oral argument that "prior to the Breen case I think we would have been in serious trouble in this situation." It will be clearly shown, I believe, that the Breen case has no present application.
The practice rule forbids the granting of a motion for summary judgment unless the pertinent papers show palpably that there is no genuine issue as to any material fact. McDermott v. Botwick, 38 N.J. Super. 528, 532 (App. Div. 1956); R.R. 4:58-3. The pertinent papers relied on in support of this motion are the complaint, the request for admissions, the plaintiff's answers thereto and the pretrial order as amended. The complaint, although based on two counts, one sounding in tort, the other in contract, is in a tort action. The existence of a contract in such a case furnishes the occasion for a tort liability. An action for malpractice is an action in negligence. It is based upon the physician's failure to comply with the duty that arises in law from his contract of employment. Young v. Crescente, 132 N.J.L. 223, 226 (E. & A. 1944). When the claim, as here, is for personal injury, the gravamen of the action is the misconduct and the damage, which the plaintiff cannot alter by his pleading. Prosser, Law of Torts, 485 (2d ed. 1955), c. 16, § 81, p. 485.
In the first count plaintiff alleges that he sustained severe personal injuries on January 14, 1954 as a result of the *478 negligence of an employee of Dealer's Transport Company; that he was admitted on that date to St. Rita's Hospital in Lima, Ohio for treatment; that he was later transferred to St. Michael's Hospital in Newark, New Jersey, where he was treated by defendants, who performed a surgical procedure on plaintiff's spine on May 22, 1954. After alleging defendants were negligent and failed to use due care in their diagnosis and treatment, the complaint alleges in paragraph 12: "* * * by reason of the omissions, carelessness, negligence and unskillfulness of the defendants, jointly and severally, the condition of the plaintiff resulting from his injuries was not alleviated, improved or cured, but became worse"; and in paragraph 13, "* * * his injuries internal and external were not improved but became worse." The second count incorporates the first count by reference and alleges in paragraph 4 thereof: "By reason of the breach of contract of the defendants * * * his injuries internal and external were not improved but became worse, * * *." The pretrial order repeats the allegations of the complaint in all essentials. By leave of court, on application, plaintiff was permitted to amend paragraph 2 of the pretrial order. On December 13, 1957 the pretrial order was amended by the addition of six short sub-paragraphs, making no change in the above allegations and including the sentence, "* * * They [the defendants] failed to promptly perform operations or take measures for decompression for the alleviation of the plaintiff's condition. * * *"
In answer to defendant's request for admissions (in addition to the admissions relative to the copy of the release referred to above) plaintiff admitted:
"1. That the injuries for which defendants were engaged to treat you [me] were the result of an accident that occurred on or about January 14, 1954.
2. That you [I] instituted a suit in the United States District Court for the Southern District of New York against Dealer's Transport Company, a Corporation, in which action you [I] sought recovery for all injuries, disabilities, expenses and damages flowing *479 from said accident, including all injuries, damages, disabilities and expenses for which damages are sought in the above entitled case [the instant case]."
The role of the judge in a motion for summary judgment is to determine whether there is a genuine issue as to a material fact, but not to decide the issue if he finds there is one. It is the moving party's burden to exclude all reasonable doubt as to the existence of any genuine issue of material fact. All inferences of doubt are to be drawn against him and in favor of his opponent. The papers supporting the motion are closely scrutinized and the opposing papers indulgently treated. Templeton v. Glen Rock, 11 N.J. Super. 1, 4 (App. Div. 1950). In reaching a decision upon a motion for summary judgment
"* * * What is needed is the application of common sense, good judgment, and decisive action, on the one hand, not to shut out a deserving litigant from his trial and, on the other, not to allow harassment of an equally deserving suitor for immediate relief by a long and worthless trial." Clark, "The Summary Judgment," 36 Minn. L. Rev. 567, 579 (1952).
Cases in which a trial would serve no useful purpose and cases in which the threat of a trial is used to coerce a settlement, can effectively be eliminated from crowded court calendars, without unjustly depriving a party of a trial, if the court exercises discernment and care in the application of the general rules. See Asbill and Snell, "Summary Judgment Under the Federal Rules," 51 Mich. L. Rev. 1143, 1172 (1953); Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 73-77 (1954).
Where, as here, a moving defendant relies on the allegations of the complaint, these being reiterated in the pretrial order, the court's scrutiny of the averments that thus support the motion is, for all purposes, a scrutiny of the case made by the pleadings. When the assertions thus reviewed are inconsistent with or contradictory of present claims, they can be treated as admissions not only in subsequent litigation, New Amsterdam Casualty Co. v. Popovich, *480 18 N.J. 218, 224 (1955), but also in the cause of action in which they are pleaded. Freeman v. Ackerson, 94 N.J.L. 308, 309 (Sup. Ct. 1920). The pleadings in a cause, for the purposes of use in that suit, are not mere ordinary admissions but are judicial admissions. The vital feature of a judicial admission is universally conceded to be its conclusiveness upon the party making it, i.e., the prohibition of any further dispute of the fact by him and of any use of evidence to disprove or contradict it. 4 Wigmore on Evidence (3d ed. 1940), secs. 1064, 2590.
Treated most indulgently, do the allegations of the complaint, repeated in the pretrial order, assert that the defendants produced a "new and independent injury" in New Jersey? In alleging the injury of January 14, 1954 in Ohio, the treatment in an Ohio hospital, the transfer to the New Jersey hospital for further treatment, in the course of which by reason of the defendants' negligence "the condition of the plaintiff resulting from his injuries was not alleviated, improved or cured, but became worse," is the plaintiff asserting, as he now contends, a claim for a distinct, i.e., "a new and independent injury" in New Jersey, unassociated with the original wrong in Ohio? I am convinced he is not. Neither does the amendment to the pretrial order assert such a claim, nor can the complaint now be amended to include such a claim. N.J.S. 2A:14-2; cf. Weinstein v. Blanchard, 109 N.J.L. 332 (E. & A. 1932).
The repetition of the phrase "the condition of the plaintiff resulting from his injuries," as well as the choice of the words, "alleviated" and "alleviation," have their peculiarly affirmative significance; they are opposed to "aggravated" and "aggravation." See Webster's New International Dictionary (2d ed. 1956), pp. 49, 68. The "aggravation" for which plaintiff presently sues must be regarded as a proximate result of the negligence of the original wrongdoer, for which the latter is responsible, under the law of New Jersey, Adams v. DeYoe, 11 N.J. Misc. 319, 320 (Sup. Ct. 1933), and under the law of Ohio, Tanner v. Espey, supra; Knight v. Strong, supra. The law just *481 cited embodies a well recognized tenet of the law of torts, Restatement of the Law of Torts, sec. 457, comment (c), illustration 1; Prosser, Law of Torts (2d ed. 1955), c. 9, sec. 49, p. 272; idem., c. 8, sec. 45, p. 230; 2 Harper and James, Law of Torts, sec. 20.3, p. 1124 (1956); 15 Am. Jur., Damages, sec. 85; 41 Am. Jur., Physicians and Surgeons, sec. 137. The tenet is unaffected by Breen v. Peck, supra. Ohio and not New Jersey is the place of the wrong, and the fact that the aggravation occurred in New Jersey makes it no less an item of the damages proximately resulting from the negligence of the original tortfeasor than are the expenses incurred for defendant physicians' services for treatment of the condition resulting from the accident, or the diminution in plaintiff's earning capacity, or his loss of salary and his pain and suffering, notwithstanding all these items of damage have been and are being experienced in New Jersey. Restatement, Conflict of Laws, sec. 412, comment (a); 11 Am. Jur., Conflict of Laws, sec. 185.
Repetition of the applicable principle in conflict of laws may be helpful in one respect, that having to do with the effect of the release. When, in executing the release, plaintiff and his wife "relied upon the advice * * * of counsel * * * respecting the legal liability of the parties released for the claims hereby released," and when they were "fully advised as to the legal effect thereof by counsel of their own selection," the law of New Jersey and the law of Ohio were identical in their effect upon the consequences of the release. Adams v. DeYoe, supra; Judson v. Peoples Bank and Trust Co. of Westfield, supra, 17 N.J. at pp. 85, 86; Tanner v. Espey, supra; Knight v. Strong, supra. The same capable, experienced counsel who represent plaintiff now represented him then, and only three weeks earlier they had filed the complaint in the present action. They now concede, as stated, that "prior to the Breen case * * * we would have been in serious trouble." The Breen case is of no avail. Its only effect can be within the law of New Jersey. Nor does Adams v. DeYoe have any effect on the release. The validity of a release as a defense in an action *482 in tort is governed by the law of the place of injury. The effect of a release is properly determined by the law controlling the discharge of the obligation sought to be released. Preine v. Freeman, supra; 76 C.J.S., supra. The release bars plaintiff's right of action in this suit.
The motion for summary judgment is granted.